UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ALESIA YVETTE BROYHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-417-CCS |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINON</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), the Rules of this Court, and the consent of the parties [Doc. 16]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 12 & 12-1] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14]. Alesia Yvette Broyhill ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On June 13, 2011, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began January 1, 2010. [Tr. 147-55]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 102]. On January 14, 2013, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 17-39]. On February 28, 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 47-65]. The Appeals Council

denied the Plaintiff's request for review [Tr. 9-14]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on September 9, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.      ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.
>
> 2. The claimant has engaged in periods of substantial gainful activity after her alleged onset date, as discussed below (20 CFR 404.1520(b), 404.1571 *et seq*., and 416.920(b) and 416.971 *et seq*.).
>
> 3. However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the periods the claimant did not engage in substantial gainful activity.
>
> 4. The claimant has the following combined impairments: degenerative disc disease, cervicalgia, osteoarthritis, Sjogren's Syndrome, systemic lupus erythematosus, and intermittent anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and

2

416.967(b).

7.  The claimant is capable of performing past relevant work as a salesperson and as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

8.  The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 52-60].

## II.  DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant will only be considered disabled if:

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in

3

the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); <u>see</u> 20 C.F.R. §§ 404.1505(a), 4015.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

<u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. <u>Id.</u> The burden shifts to the Commissioner at step five. <u>Id.</u> At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. <u>Her v. Comm'r of Soc. Sec.</u>, 203 F.3d 388, 391 (6th Cir. 1999) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987)).

### III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

5

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits."  Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

The Plaintiff contends that the ALJ erred in three respects.  First, the Plaintiff challenges the ALJ's finding at step one of the sequential evaluation that the Plaintiff performed substantial gainful activity after her alleged onset date.  [Doc. 12-1 at 9-10].  Second, the Plaintiff argues that the ALJ erred at step two by failing to identifying which of the Plaintiff's impairments were severe.  [Id. at 10-11].  Finally, the Plaintiff submits that substantial evidence does not support the ALJ's residual functional capacity ("RFC") determination because the ALJ failed to properly assess the Plaintiff's exertional and nonexertional limitations opined by different medical source providers.  [Id. at 11-15].

The Commissioner responds that substantial evidence supports the ALJ's finding that the Plaintiff performed substantial gainful activity subsequent to her alleged onset date.  [Doc. 14 at 4-7].  The Commissioner also argues that the ALJ's step two finding was proper because he discussed the Plaintiff's impairments and found that the combination of her impairments were severe, resulting in the continuation of the sequential evaluation.  [Id. at 7-9].  Lastly, the

Commissioner maintains that substantial evidence supports the ALJ's RFC determination because he properly considered the medical evidence of record, including the medical source opinions, when he assessed the Plaintiff's functional limitations. [Id. at 9-18].


V.     **ANALYSIS**

The Court will address the Plaintiff's allegations of error in turn.

A.     **Substantial Gainful Activity**

"The Social Security Act provides that an individual who is working and engaged in substantial gainful activity is not entitled to disability benefits." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996). This determination is made at step one of the sequential evaluation. Id. The claimant bears the burden of demonstrating that she was not engaged in substantial gainful activity. Her, 203 F.3d at 391.

During the administrative hearing, the Plaintiff testified that since July 2011, she has worked part-time as a sales associate and typically worked between 15-20 hours, but sometimes up to 28 hours, per week. [Tr. 21]. The Plaintiff testified that due to her panic attacks as well as back and leg pain, her supervisor allowed her to "sit down for a few minutes" or go to the back to take a break. [Tr. 30, 34]. While the Plaintiff concedes that her first quarter earnings for 2012, which totaled $3,093.00 [Tr. 164], exceed the threshold amount for substantial gainful activity, she argues that the ALJ did not properly consider the impact of her workplace accommodation, which not only prejudiced the ALJ's step one finding but also tainted the ALJ's RFC determination as the Plaintiff's employment was a factor the ALJ considered in regard to her credibility. [Doc. 12-1 at 9-10].

The Commissioner argues that the Plaintiff fails to rebut the presumption that her

7

employment constituted substantial gainful activity. [Doc. 14 at 5]. The Commissioner notes that the ALJ properly observed in his decision that work done even under special conditions can constitute substantial gainful activity. [Id.]. Moreover, the Commissioner cites to the closing statement offered by Plaintiff's attorney who admitted that the Plaintiff's earnings during the first quarter of 2012 could be substantial gainful activity, and that "[n]either the Plaintiff nor her attorney indicated that the record required further development concerning her work activity." [Id.]. The Commissioner contends that the Plaintiff only offers vague testimony that her supervisor provided some accommodations. [Id.]. The Commissioner further argues that the ALJ properly considered the Plaintiff's work as one factor in weighing the Plaintiff's credibility. [Id. at 6].

"Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). Work can be substantial if it is done on a part-time basis. Id. The primary consideration for determining whether a claimant has engaged in substantial gainful activity is the amount of earnings derived from that work activity. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). While it is presumed that a claimant who earned more than a specific amount prescribed by the guidelines has engaged in substantial gainful activity, Id. at §§ 404.1574(b)(2)(ii)(B), 416.974(b)(2)(ii)(B), the claimant may rebut the presumption "by evidence of the nature of the applicant's work, the conditions of employment and the adequacy of the applicant's performance." Dinkel v. Sec'y of Health & Human Servs., 910 F.2d 315, 319 (6th Cir. 1990) (citing 20 C.F.R. § 404.1573). In this regard, work done under a special condition may demonstrate that a claimant's work does not constitute substantial gainful activity. 20 C.F.R. §§ 404.1573(c), 416.973(c). However, a claimant's ability to perform work even under a special condition may also demonstrate that she has "the

8

necessary skills and ability to work at the substantial gainful activity level." Id. Under the regulations, taking frequent rest periods is one example of a special condition that an employer may provide. Id.

In this case, the ALJ noted that a claimant may engage in substantial gainful activity even when the work performed is part-time, or the claimant does less work, gets paid less, or has less responsibility than what was worked before. [Tr. 52]. The ALJ observed that the Plaintiff had been working her job as a sales associate for over a year, and that the Plaintiff testified she earned $8.25 an hour working 15-20 hours a week and sometimes up to 28 hours per week. [Tr. 53]. However, because the Plaintiff's Earning Record showed that she earned $2,296.00 in the fourth quarter of 2011, and $3,093.00 in the first quarter of 2012 [Tr. 164], the ALJ found that the Plaintiff's wages indicated that she worked significantly more than the typical 15-20 hours per week she alleged [Tr. 53]. In addition, while the Plaintiff's first quarter earnings of 2012 are the only earnings that constitute substantial gainful activity, the ALJ found that the Plaintiff's ability to work over several years after her alleged onset date demonstrated "that she can meet a work schedule despite her impairments." [Id.]. In this regard, the ALJ remarked that the hours the Plaintiff worked "were primarily limited by economic factors and not due to any medical restrictions." [Id.].

The Court finds a presumption exists that the Plaintiff engaged in substantial gainful activity for the first quarter of 2012. As demonstrated by the Plaintiff's Earning Record, she earned $3,093.00 during this time period, an amount in excess of the total needed to create a presumption of substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii). Moreover, Plaintiff's counsel conceded during the administrative hearing that the Plaintiff's first quarter earnings for 2012 "appear to be earnings that could be SGA." [Tr. 37]. Therefore, the

9

Court finds that a presumption has been established that the Plaintiff engaged in substantial gainful activity after her alleged onset date. Accordingly, the inquiry turns to whether the Plaintiff has provided sufficient evidence to overcome the presumption.

The Plaintiff argues that her need to sit down for a few minutes throughout the day and take breaks as needed for panic attacks are special conditions that demonstrate her work did not rise to the level of substantial gainful activity. [Doc. 12-1 at 9]. Despite the Plaintiff's alleged accommodations, the Court nonetheless finds that the ALJ reasonably concluded that the Plaintiff engaged in substantial gainful activity. Aside from the Plaintiff's testimony, she fails to provide verifiable proof of any workplace accommodation. The Plaintiff essentially alleges that her impairments require that she regularly take at-will breaks, sometimes lasting up to 30 minutes at a time [Tr. 34], throughout the day. Without any proof from her employer that such an accommodation was made, it is hard to imagine that the Plaintiff could sustain regular and continuous employment at her job for the year-and-a-half she worked as a sales associate. Moreover, the Plaintiff's ability to maintain employment since her alleged onset date, even if not always at substantial gainful activity levels, as recognized by the ALJ, is telling of the Plaintiff's ability to engage in workplace activity. See 20 C.F.R. §§ 404.1565(a) and 416.965(a) (length of employment is appropriate factor to consider in making vocational findings).

Further, while the Plaintiff only has one quarter of qualified earnings, the Plaintiff appears to have the ability to work at substantial gainful activity levels on a part-time basis. The ALJ observed that the amount of hours the Plaintiff worked corresponded to economic factors, such as the availability of hours the employer could afford rather than the Plaintiff's limitations caused by medical restrictions or impairments, as the Plaintiff's fourth quarter wages for 2011 and first quarter wages for 2012 were significantly higher than the number of hours the Plaintiff

10

alleged to routinely work. Thus, even though the Plaintiff has one quarter of substantial gainful activity, the ALJ could reasonably conclude that the Plaintiff's work history demonstrated she could meet the demands of a work schedule despite her impairments. See 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

The Plaintiff submits that even if the ALJ's step one finding is upheld, remand is appropriate to consider whether she is entitled to a two year closed period of benefits. [Doc. 12-1 at 10]. The Court disagrees. While the ALJ continued the sequential evaluation, finding that there was a continuous 12-month period in which the Plaintiff did not engage in substantial gainful activity [Tr. 53], the ALJ ultimately concluded that the Plaintiff was not under a disability from January 1, 2010, the Plaintiff's alleged onset date, through the date of the disability determination [Tr. 60]. Because the Court finds that the ALJ's denial of benefits is supported by substantial evidence, as discussed more fully below, the Plaintiff is not eligible for a closed period of benefits.

Accordingly, the Court finds the Plaintiff's allegation of error is without merit.

### B.       Severe Impairment

At step two of the sequential evaluation process, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1520(c), 416.920(c). "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps."

11

McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (citing Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008)).

The Plaintiff contends that while the ALJ found that the Plaintiff had eight different impairments that in combination were severe, the ALJ failed to identify which among the eight impairments were individually severe. [Doc. 12-1 at 10]. The Plaintiff argues that the ALJ's duty to identify the individual impairments that were severe "is a critical factor" that impacts subsequent steps of the sequential evaluation process, namely steps three and four. [Id. at 10-11]. Because the ALJ failed to articulate which impairment was individually severe, the Plaintiff submits that a subsequent reviewer "is left to assume" that all of the Plaintiff's impairments were found to be severe. [Id. at 11].

The Commissioner argues that the ALJ properly considered the Plaintiff's impairments when he considered the combined effect of her impairments and concluded that the combination of those impairments met the requirement for a severe impairment under the regulations. [Doc. 14 at 8]. Therefore, the Commissioner submits there is nothing to "assume" about the ALJ's step two finding. [Id.]. Further, the Commissioner states that the Plaintiff fails to cite any authority for the proposition that identifying an individual impairment as being severe is critically important to the remainder of the sequential evaluation as the regulations require an ALJ to consider all of the Plaintiff's impairments, even those found to be nonsevere, at subsequent steps. [Id. at 9].

The Court finds the Plaintiff's argument unpersuasive. Just as "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination," Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990), the ALJ's finding, here, that the Plaintiff's impairments in combination were severe,

12

does not imply that he failed to consider the effect of the Plaintiff's impairments singularly. Indeed, the ALJ's step two analysis actually discusses the Plaintiff's physical impairments individually [Tr. 54] as well as the Plaintiff's mental impairments which were found to be nonsevere [Tr. 56-57]. The Court notes that the Plaintiff does not identify which one of her impairments was individually severe, only that the ALJ should have found at least one of them severe. The Plaintiff cites no authority for this proposition and the Court is not aware of any. Rather, the regulations are clear that a "severe impairment" is an impairment *or* combination of impairments that affect the Plaintiff's ability to perform work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). Accordingly, the Court finds the ALJ properly concluded that the Plaintiff's physical impairments in combination met the threshold test for constituting a "severe impairment."

Moreover, even if the Plaintiff could successfully argue that one of her impairments should have individually been identified as severe, "the specific severe impairment noted by the ALJ in his step two finding is irrelevant." Hastie v. Colvin, No. 3:13-CV-511-TAV-HBG, 2014 WL 2208942, at *3 (E.D. Tenn. May 28, 2014). The Court of Appeals for the Sixth Circuit has explained that when an ALJ finds some impairments to be severe and continues the sequential evaluation process, considering both severe and nonsevere impairments at subsequent steps, "an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (quoting Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)). Here, the ALJ properly considered all of the Plaintiff's impairments at steps three and four. Specifically, at step three, the ALJ discussed Listing 1.04 in regard to the Plaintiff's degenerative disc disease and cervicalgia, Listing 1.02 in regard to the Plaintiff's osteoarthritis and arthralgias, and Listings

13

14.02 and 14.10 in regard to the Plaintiff's diagnosis of systemic lupus erythematosus and Sjogren's syndrome. [Tr. 57-58]. These listings correspond to all of the physical impairments the ALJ found were severe in combination. At step four, the ALJ stated that he "considered all symptoms," including symptoms and limitations from complications from the Plaintiff's open heart surgery, panic attacks, and depression—impairments the ALJ found to be nonsevere—and symptoms and limitations from bulging discs, Sjogren's Syndrome, problems with dropping things out of the left hand, reduced range of motion in the back and neck, leg numbness, the need to change positions, and fatigue—impairments, and corresponding symptoms, the ALJ found to be severe in combination. [Tr. 58]. The ALJ's discussion demonstrates that he fulfilled his obligation under the regulations by considering the impact the Plaintiff's impairments had upon her RFC, regardless of the impairments' severity.

Therefore, the Court finds the Plaintiff's second allegation of error is not well-taken.

## C.    Residual Functional Capacity

An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence in the record. Rudd v. Comm'r of Soc. Sec., No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Oct. 28, 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). The RFC is the most a claimant can do despite her impairments. 20 C.F.C. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not

14

affect her functional capacity to do work. One does not necessarily establish the other." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. 2007). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003).

In the absence of a treating source opinion deserving controlling weight, as is the case here, an ALJ is required to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). ALJs are not "bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Moreover, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The factors applicable for assessing a treating physician's opinion remain guiding principles for evaluating opinions by other acceptable medical sources. That is, the degree of weight assigned to an opinion of a consultant or state agency physician is dependent on the supportability of the opinion, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors which may support or undermine the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "The better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given.

15

Id. at §§ 404.1527(c)(3), 416.927(c)(3).  In addition, "the more consistent an opinion is with the record as a whole, the more weight" the opinion will be entitled to.  Id. at §§ 404.1527(c)(4), 416.927(c)(4).

### A.    *Assessment of Nonexertional Limitations*

The Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly consider nonexertional limitations opined by consultative examiner Candice Blake, Psy.D., and nonexamining state agency psychologists George Davis, Ph.D., and Corine Samwel, Ph.D.  [Doc. 12-1 at 12].  The Plaintiff submits that each medical source opined mild to moderate limitations, which the ALJ improperly rejected when he failed to weigh the statutory factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The Commissioner responds that treatment records from the Plaintiff's primary care provider, as recognized by the ALJ, were inconsistent with allegations of disabling limitations caused by the Plaintiff's anxiety and depression.  [Doc. 14 at 12].  The Commissioner submits that the ALJ properly considered the Plaintiff's part-time work and daily living activities as factors that discredited the Plaintiff's allegations.  [Id. at 13-14].  With specific regard to the opinions offered by the consultative and state agency medical sources, the Commissioner argues that the ALJ's assessment and weight afforded to each opinion was appropriate and supported by substantial evidence.  [Id. at 15-16].

On September 20, 2011, the Plaintiff presented to Dr. Blake for a consultative examination.  [Tr. 470-73].  The Plaintiff reported chronic extreme anxiety and depression and related she feels terrified all the time, has trouble breathing and sleeping due to panic attacks,

16

hears voices and experiences auditory hallucinations, and sometimes has problems with her memory. [Tr. 470-71]. As to daily living activities, the Plaintiff reported that she relies mostly on her 17-year-old daughter to do the housework, but tries to assist with some household chores such as laundry and grocery shopping. [Tr. 471-72]. She stated she sits at home all day waiting for her daughter to get home from school and denied reading, watching television, or cooking. [Id.]. Upon examination, the Plaintiff was unable to talk about a current event or answer a simple arithmetic calculation, but was able to accurately spell the word "world" backwards and perform serial 7s. [Tr. 471]. Dr. Blake diagnosed the Plaintiff with anxiety disorder NOS, severe and major depression, single episodes, severe with psychotic features. [Tr. 472]. Dr. Blake concluded that the Plaintiff's understanding, memory, and social interaction was moderately limited, her concentration and persistence was extremely limited, and her overall adaption was markedly limited. [Id.].

After discussing Dr. Blake's opinion, the ALJ assigned it "no weight" because the level of limitations assessed appeared to be based upon the Plaintiff's subjective allegations. [Tr. 55]. The ALJ found Dr. Blake's opinion inconsistent with treatment records from the Plaintiff's primary care provider, Fred Bennett, M.D., who first diagnosed the Plaintiff with anxiety and depression in September 2004 and has provided regular treatment to the Plaintiff since that time. [Id.]. The ALJ explained that these records provided a longitudinal window into the Plaintiff's mental health treatment which generally consisted of normal mental examinations, few reported symptoms, and no allegations of extreme symptoms, such as auditory or visual hallucinations. [Id.]. The ALJ also discounted the limitations opined by Dr. Blake due to the Plaintiff's employment as a sales associate. [Id.]. The ALJ noted that the Plaintiff was hired only three days after her consultative examination and has maintained her job for over a year-and-a-half,

17

which demonstrates that she is capable of functioning at a higher level than alleged during the examination. [Id.].

The Court finds that the ALJ provided adequate and well-supported reasons for rejecting Dr. Blake's opinion. The Court has reviewed the treatment notes of the Plaintiff's primary care provider, Dr. Bennett, and despite years of treatment for depression and anxiety, the Plaintiff's treatment records are void of any symptoms or allegations similar to those expressed by the Plaintiff during the consultative examination. [Tr. 372-469, 555-74]. While the Plaintiff was prescribed medication at times, mental examinations and treatment notes are largely unremarkable, particularly in light of the extreme symptoms the Plaintiff reported to Dr. Blake. In fact, during one of the Plaintiff's more recent visits on August 21, 2012, treatment notes document that the Plaintiff's depression was well managed. [Tr. 557]. Moreover, the Court agrees with the ALJ's finding that the Plaintiff's ability to work in the public domain for an extended period of time belies the severity of the symptoms alleged. As a result, the Court is unable to conclude that the ALJ erred as a matter of law in assigning no weight to Dr. Blake's opinion.

The Plaintiff argues that Dr. Blake's opinion was entitled to greater weight since she was an examining source. [Doc. 12-1 at 13]. As a one-time examiner, however, Dr. Blake was not entitled to any "special degree of deference." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). While examining sources, as a general rule, may be entitled to more weight than nonexamining sources, the weight assigned to a consultative examiner's opinion ultimately depends upon consideration of all the factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c) rather than just the examining relationship. The lack of corroborating evidence from the Plaintiff's long time primary care physician and the Plaintiff's ability to work within the public

18

domain are reasonable findings reached by the ALJ and speak directly to the consistency and supportably of Dr. Blake's opinion.

The Plaintiff further contends that nonexamining state agency psychologists Drs. Davis and Samwel similarly opined nonexertional limitations that the ALJ should have adopted. The Court, however, is not persuaded.

The opinion the Plaintiff refers to in regard to Dr. Davis is a Psychiatric Review Technique dated March 29, 2010. [Tr. 358-71]. Under the "paragraph B" criteria, Dr. Davis assessed mild limitations in the areas of daily living activities, maintaining social functioning, and maintaining concentration, persistence, and pace. [Tr. 368]. Social Security Ruling 96-8p explains, however, that Psychiatric Review Technique Forms "assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." 1996 WL 374184, at *4 (July 2, 1996). Therefore, the "limitations identified in the 'paragraph B' and 'paragraph C' criteria are *not* an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Id. (emphasis added). Accordingly, the Court finds that the mild limitations assessed by Dr. Davis, in regard to steps two and three, do not undermine the ALJ's decision to omit nonexertional limitations at step four of the sequential evaluation. See Pinkard v. Comm'r of Soc. Sec. Admin., No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (holding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"); Bailey v. Astrue, No.

19

CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011) ("The RFC assessment takes into account all of the relevant evidence in the case record, . . . and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing Soc. Sec. Ru. 96-8p, 1996 WL 374184, at *4).

As to Dr. Samwel's opinion, she completed a form entitled "Mental Residual Functional Assessment" on October 13, 2011, wherein she responded to a variety of multiple-choice questions regarding the Plaintiff's mental ability to perform job related activities. [Tr. 475-77]. Dr. Samwel indicated that the Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. [Tr. 475-76]. Based upon these findings, Dr. Samwel concluded that the Plaintiff could understand, retain, and carry out simple instructions, could consistently and usefully perform routine tasks on a sustained basis, with normal supervision, and could cooperate effectively with the public and co-workers in completing simple tasks and transactions, and could adjust to the mental demands of most new task settings. [Tr. 477].

The ALJ assigned "significant weight" to Dr. Samwel's overall conclusion that that the Plaintiff is capable of sustained work, but concluded "that the overall weight of evidence, including the claimant's ongoing work activities, show that she is capable of a full range of light work, and that she does not have any severe mental impairments." [Tr. 59].

For the same reasons already discussed above with regard to Dr. Blake's opinion, the Court finds no error in the conclusion reached by the ALJ with regard to Dr. Samwel's opinion.

20

The ALJ's reliance on the Plaintiff's sustained work history and the lack of mental impairments and limitations documented by her primary care physician provided substantial evidence for the ALJ's determination. The Court recognizes that the medical opinions at issue could provide substantial evidence that the Plaintiff is more limited than opined by the ALJ. However, because "[t]he ALJ specifically cited the major pieces of medical evidence, assigned weight to each report based upon the consistency of its findings with the medical record as a whole, explained his reasons for rejecting the contrary medical evidence, and drew his conclusion on the basis of the relevant evidence," his decision is not subject to reversal by the Court even where evidence exists supporting an opposite conclusion than that reach by the ALJ. See Mitchell v. Comm'r of Soc. Sec., 330 F. App'x 563, 568 (6th Cir. 2009).

Accordingly, the Court finds the Plaintiff's allegation of error is not well-taken.

### B.      *Exertional Limitations*

The Plaintiff similarly argues that the ALJ ignored exertional limitations that were opined by two consultative examiners, Robert Blain, M.D., and Wesley Giles, M.D., who assessed limitations more consistent with sedentary work. [Doc. 12-1 at 14]. The Plaintiff claims that the ALJ erred by discounting these opinions and instead gave greater weight to the opinions of nonexamining state agency physicians. [Id.]. The error, according to the Plaintiff, prejudiced the ALJ's determination that the Plaintiff was capable of returning to past relevant work at the light exertional level. [Id.].

The Commissioner contends that the ALJ appropriately discredited Dr. Blaine's opinion because it was inconsistent with the benign treatment notes and diagnostic imaging records, as well as the Plaintiff's ability to sustain part-time work for a substantial portion of the time she

claimed she was disabled. [Doc. 14 at17]. The Commissioner likewise asserts that the ALJ properly weighed Dr. Giles' opinion and given the benign clinical observations and diagnostic imagining results contained in the record, which span several years, Dr. Giles' opinion was not entitled to a greater degree of deference. [Id.].

Dr. Giles conducted a consultative examination on December 18, 2009 [Tr. 343-45], at which time the Plaintiff complained of chronic neck and back pain since June 2009, and occasional numbness in her toes and fingers [Tr. 343]. Upon examination, the Plaintiff walked with a limp favoring her right side, she performed a heel-to-toe walk with balance difficulty and was unable to do a toe walk due to lower back pain, she could do a partial deep knee bend with difficulty, and had limited range of motion in her cervical spine with tenderness. [Tr. 344]. The Plaintiff had normal right and left lateral flexion, tenderness throughout her thoracic and lumbar spine, normal range of motion in her shoulders, elbows, writs, hands, knees, and ankles, and normal muscle strength. [Tr. 344-45]. Based upon his examination, Dr. Giles concluded that the Plaintiff "definitely has limitations secondary to her back pain." [Tr. 345]. As a result, he limited the Plaintiff to lifting no more than 10 pounds, no overhead reaching, no pulling or pushing more than 25 pounds, no climbing ladders, crouching, crawling, or exposer to vibrations, but had unrestricted fingering and handling ability, could climb stairs and ramps occasionally, and had no environmental or communication restrictions. [Tr. 345].

A second consultative examination was performed by Dr. Blaine on October 13, 2011. [Tr. 494-96]. The Plaintiff reported back pain since 2009 that radiates to both her hips and down her legs, worse on the left side, and numbness and tingling in both her legs and feet. [Tr. 494]. She similarly complained of neck pain that began in 2009 and radiates down into her shoulders and both hands, causing headaches two to three times per week. [Id.]. Upon examination, the

22

Plaintiff had full range of motion in her elbows, wrists, and ankles, but the range of motion in her hips and knees could not be determined. [Tr. 495]. She was positive for back pain with straight leg raises, she had a grip strength of 4/5 in her right hand and normal grip strength in her left hand, she had normal flexor and extensor strength in all of her extremities, and her station was normal but her gait was antalgic, favoring the left lower extremity. [Id.]. The Plaintiff's tandem walk demonstrated poor balance, single leg stands showed weakness in her left leg, and she experienced pain in her feet and lower extremities when she performed a heel-to-toe walk. [Id.]. Dr. Blaine diagnosed the Plaintiff with low back pain secondary to disc disease and neck pain. [Tr. 496]. Dr. Blaine opined that the Plaintiff could stand or walk for two hours and sit for eight hours in an eight-hour workday and could lift and carry five pounds frequently and 20 pounds infrequently. [Id.].

In the disability determination, the ALJ assigned "partial weight" to Dr. Giles' opinion, finding that the overall evidence demonstrated that the Plaintiff was capable of performing light work. [Tr. 55]. The ALJ noted the lack of abnormal clinical findings in the Plaintiff's long term treatment records and diagnostic imagining results showing limited findings. [Id.]. The ALJ also assigned "little weight" to Dr. Blaine's opinion citing similar reasons and adding that the Plaintiff's ability to maintain employment for over one-and-a-half-years was consistent with an ability to perform light work and contrary to Dr. Blaine's more limited restrictions. [Tr. 56].

The Court finds that substantial evidence supports the weight assigned to each opinion by the ALJ. The ALJ discussed the Plaintiff's musculoskeletal complaints in detail, noting that the Plaintiff had received chiropractic care, acupuncture, physical therapy, and medications over a course of time beginning in 2004. [Tr. 54]. While the Plaintiff has received long term care for complaints of back pain by her primary care provider Dr. Bennett and his staff, as well as pain

23

management provider Kevin Bailey, M.D., and treatment notes from these medical sources provided some abnormal findings such as antalgic gain and lumbar spine tenderness, the ALJ pointed out that the treatment notes also demonstrate that the Plaintiff had no significant strength deficits, circulatory comprises, neurological deficits, muscle spasms, atrophy, changes in weight, and had full range of motion and normal tone and strength. [Id. (citing Exhibits 1F, 2F, 7F, 13F, and 17F)]. The ALJ also discussed diagnostic imaging results, which showed limited complaints. [Id.]. Specifically, x-rays from June 2009 and October 2011 of the Plaintiff's thoracic and lumbar spine were negative, as well as a February 2012 x-ray of her left wrist and hand. [Id. (citing Exhibits 2F at 3-4, 11F at 1, 16F at 6)]. An MRI was done in July 2009, which revealed central protrusion at C4-5 with mild stenosis but no cord compression, and broad base protrusion at C5-6 with no significant cord compression. [Id. (citing Exhibit 2F at 2)].

Given the Plaintiff's foregoing treatment history in conjunction with her ability to maintain part-time work over an extended period of time, the Court is unable to conclude that the ALJ erred when he assigned greater weight to the nonexamining state agency physicians, who opined that the Plaintiff was capable of light work [Tr. 348-56, 357, 498-57, 537], than Drs. Blaine and Giles whose opinions were more restrictive. The ALJ provided specific reasons, supported by the record, for declining to give the opinions of the consultative examiners more weight. See Mitchell, 330 F. App'x at 568. The Court also notes that Dr. Giles did not have the benefit of reviewing the Plaintiff's medical records or imagining studies when he assessed his opinion [Tr. 343], whereas the nonexamining state agency physicians did. In addition to the Plaintiff's treatment records and diagnostic imaging results, the ALJ also considered the Plaintiff's subjective complaints and daily activities in forming his RFC determination. [Tr. 58-59]. Therefore, the Court finds that the ALJ properly adhered to agency procedure in weighing

the medical evidence, and the Plaintiff's allegations of error are without merit.

**VI.     CONCLUSION**

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment [**Doc. 12**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 13**] is **GRANTED**.  The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge